## T. H. Freeman v. The State.

No. 1561. Decided June 22, 1898.

Motion for rehearing decided May 10, 1899

**1. Murder—Weapon Used—Evidence as to.**

On a trial for murder, committed with a knife, where there was a conflict in the evidence as to the size and appearance of the knife which was used, it was competent for the State to prove, in contradiction of the defendant's statements, that the knife found on his person when arrested by the sheriff was the one he had used; that a short time after the difficulty defendant returned to the drugstore where he was employed and was seen behind the counter in proximity to the showcase where pocketknives of a large size and cutlery were kept, and where he had an opportunity, before his arrest, of disposing of the knife which he had in fact used.

**2. Same.**

Upon the facts above stated, the testimony of defendant's employer, that he kept in his drugstore a lot of large pocketknives, was also admissible.

**3. Evidence—Declarations of Deceased—Res Gestae.**

Declarations, made by deceased within from thirty to sixty minutes after the difficulty, as to how it occurred, are admissible as res gestae where they appear to have been spontaneous and to have sprung out of the transaction, and where there is nothing suggestive of any fabrication with regard to the statements.

**4. Murder—Presumption—Charge.**

On a trial for murder, where there was no evidence showing that deceased was armed, and defendant had testified that he believed deceased had a knife and was using it when he struck him, a charge of the court was authorized which instructed the jury that if deceased was, at the time, armed with a weapon reasonably calculated to produce death or serious bodily harm, then the law would presume that deceased intended to murder or inflict serious bodily injury upon defendant.

**5. Self-Defense—Justifiable Force.**

Every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicated to be necessary.

ON MOTION FOR REHEARING.

**6. Res Gestae—Definition of.**

Res gestae are facts speaking for themselves, through the instinctive words and acts of participants, when narrating the facts. What is said and done by partici-

40th Crim. Reps.—35

pants under the immediate spur of the transaction becomes thus part of the trans-action, because it is thus the transaction speaks.'

**7. Same—Declarations as.**

In order to constitute declarations as part of the res gestae, it is not necessary that they be precisely coincident in point of time with the principal fact, but if they spring out of the principal fact, were voluntary and spontaneous, and made at a time so near as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence. The element of time is not always material. See opinion for a discussion in extenso of the question, with a review of the leading Texas cases.

**8. Same.**

On a trial for murder, where it appeared that after the infliction of the mortal wound deceased left the place of the difficulty to go to his saloon, sixty or seventy yards distant, and after going half way met a party and told him to go for a doctor, at the same time giving him his keys to the saloon, which the witness took and opened the saloon and took deceased in and laid him upon a blanket, when de-ceased fainted and remained unconscious some minutes, and upon regaining conscious-ness and after his wounds were dressed, only some thirty to sixty minutes after the difficulty, made a statement with regard to the difficulty, narrative in form and in the past tense, which he also prefaced with some remarks about his occupation as a saloon-keeper; Held, by a majority of the court, that his statement was admis-sible as a part of the res gestae.

APPEAL from the District Court of Knox, on change of venue from the county of King. Tried below before Hon. S. I. NEWTON.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary. .

The indictment charged appellant with the murder of Dan Potter, by cutting him with a knife, on the 27th day of November, 1897.

The opinion states all the essential facts attendant upon the homicide.

J. H. Glasgow and J. M. Morgan, for appellant, filed an able brief on the presentation of the issues discussed in the original opinion.

W. W. Walling and Mann Trice, Assistant Attorney-General, for the State.

On motion for rehearing, Cecil H. Smith, for the motion, as to the in-admissibility as res gestae of the statement by deceased with reference to the difficulty, cited Underh. Crim. Ev., secs. 117, 121; Whart. Crim. Ev., sec. 262; Railway v. Anderson, 82 Texas, 516; Insurance Co. v. Moseley, 8 Wall., 416; Railway v. Crowder, 70 Texas, 222; Mitchum v. State, 11 Ga., 615; Boothe v. State, 4 Texas Crim. App., 211; Foster v. State, 8 Texas Crim. App., 250; Stephens v. State, 20 Texas Crim. App., 270; Geibel v. State, 28 Texas Crim. App., 151; Bradberry v. State, 22 Texas Crim. App., 278; Pearson v. State, 18 Texas Crim. App., 562; Fulcher· v. State, 28 Texas Crim. App., 465; Lewis v. State, 29 Texas Crim. App., 201; Stagner v. State, 9 Texas Crim. App., 456; Lindsey v. State, 30 Texas Crim. Rep., 164; Ingram v. State, 43 S. W. Rep., 518.

In this connection we desire to observe that in none of these cases did anything transpire to break the connection of mind or feeling between the action and the declaration. Any departure from the strict English

rule which restricts the declarations to those made at the time the thing is done, and giving to the terms their primary meaning, has ever been viewed with apprehension by all of the courts of this country, and many high authorities very logically contend that no declaration made after the consummation of the act can attain a higher dignity than that of being very respectable hearsay.

However, it seems to be clear that declarations made by the participants after a difficulty are admitted as res gestae. And the rules that govern them seem to be settled; they must spring out of the thing done, the difficulty, and be a part of it; the declaration and the act must form a single and indivisible transaction; they must be verbal acts, not narratives; they must be spontaneous and instinctive. The length of time between the act and the declaration and the circumstances must negative and absolutely preclude fabrication in whole or in part, and the exercise of the mental faculties in making them. Unless the court can say from the circumstances that the declaration arises instinctively out of the transaction and did not emanate from the reasoning faculties, they are not res gestae, but hearsay,—and this is true without reference to the time that elapsed between the transaction and the declaration.

In the opinion in this case this expression is used: "There is nothing in the statement suggestive of any fabrication in regard to the statement." We contend the circumstances must preclude fabrication. In other respects we have no complaint to make of the law as laid down by the court, but we do complain at the application of it. Tested by the principles we have discussed, we think the declarations made by the deceased as he came from the scene of the difficulty, "That damn son of a bitch has killed me about that coon," is clearly res gestae. Tested by the same principles, we think it equally clear that the declarations made half an hour or more later to Nancy Johnson are not res gestae.

In Bradberry's case, 22 Texas Criminal Appeals, 277, the witness Hasselfield lived some 200 yards from the place where the difficulty occurred. Hearing the firing, after it ceased he went to the place, saw the defendant hobbling around, and asked him what was the matter. The defendant told the witness to catch his (defendant's) horse and bring it to him, and he would tell him all about it. He caught defendant's horse and took it to him, which took about three minutes, and defendant then made the statement to him about the difficulty, which was excluded.

Justice White, in this well-considered case, says that the action of the trial court in excluding these statements was right; that the facts show "a break or let-down between the difficulty and the statement; that the defendant appeared to be cool, and that the three minutes' time might have afforded defendant ample opportunity to concoct the statements, and that therefore the statements were not res gestae."

Applying the principles as laid down in the concrete in that case to the case at bar, we say that there was "a break or let-down" between the difficulty and this statement. The deceased sent for the doctor, his condition was investigated, his wounds were dressed, and his neighbors had

gathered around him in his saloon, and from thirty minutes to an hour had elapsed between the difficulty and his declarations to Nancy Johnson, and for that reason they were not admissible. The declaration in the Bradberry Case was excluded because the frame of mind of the defendant was apparently cool when the declarations were made, three minutes having elapsed since the difficulty; over half an hour had elapsed in this case. The statement itself shows that the deceased was ruminating over his condition in life and his business and social standing by reason of his occupation, and shows on the face of it coolness in making it. If the declaration in Bradberry's case was not res gestae, then certainly, for every reason that is given for excluding that declaration, the declarations in this case should have been excluded. Tested by all of the principles that apply to res gestae, the declarations to Nancy Johnson were hearsay; they were not instinctive; they were not spontaneous; they show on their face that the mind was going over the past life of the defendant; was reflecting over the business he was engaged in, and the view the public generally take of that character of business; was justifying himself in his business by showing to his neighbors who surrounded him there, that, while his business was bad, he was a good man in the business.

If under the circumstances the statement was res gestae, then we submit that it would be exceedingly hard to imagine a case in which the declarations of a participant in a difficulty would not be res gestae. True it is, the statement made may have been true, but that is not the test. Did he have opportunity to fabricate or color it?

For the reasons given, we think this declaration was hearsay, and because it was admitted, a rehearing should be granted and this case reversed and remanded.

*Robt. A. John,* Assistant Attorney-General, for the State, against the motion.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifteen years; hence this appeal.

It appears that appellant and deceased both lived in Guthrie, in King County. Appellant was clerking in a drugstore, and deceased was keeping a saloon. Prior to the date of the homicide the parties appear to have been friendly. Appellant owned a pet coon, and on that morning some one had turpentined it. When defendant discovered this, he made inquiries of several persons to ascertain who had done this, and denounced the party in very vindictive terms. He was informed by some one that probably the deceased, Potter, was the party. According to the theory of the State he prepared himself with a knife, and when he saw deceased returning from his dinner, he left the drugstore and intercepted him. He asked him if he had seen his coon that morning. Deceased told him that he had not. Deceased then asked him why he made the inquiry. Defendant replied that some damn son of a bitch had turpentined it.

Deceased then remarked that he had had a hand in that, and that he must not use such language. Thereupon defendant told him if he had done so that he was a God damn son of a bitch, and deceased immediately struck him. The witnesses show that the parties exchanged blows for a short time, in which deceased was cut with a knife, and deceased then struck appellant, and knocked him flat on his back, and paused a moment as if to jump on him, but immediately walked off and left him. He went to his saloon, and a doctor was sent for, and his wounds dressed. He lingered for eight or nine days, and then died, as the physician states, from the effect of said wounds. Defendant states what occurred prior to the first blow struck by deceased substantially as do the other witnesses, but states that he got his knife out after he was knocked down; that he cut deceased while he was over him, and had him by the collar. There were a number of witnesses to the difficulty, and all of them testified that the cutting was not done in this manner. Their testimony shows that it was done immediately on first assault by deceased on the defendant, and before deceased had knocked defendant down. Appellant also states that he did not come from the drugstore and cross the square to intercept the deceased, but that he was then on his way to the hotel where he boarded, to get a bottle of medicine that he desired to use, and that the matter of the coon came up incidentally; though he stated that he had heard prior to that that deceased had turpentined his coon. In addition to this, there was some controversy as to the weapon used by appellant. Appellant himself testified that the cutting was done with the knife which was produced in court, and which was taken from his person after the homicide. This was a small knife, and not in very good repair, and appeared to be dull. He stated, however, that it was sharper at the time the cutting was done. On the part of the State there was testimony tending to show that the cutting was done with a large, bright knife, with blade about three inches long. It was also shown that appellant was a weakly man, and not the equal in physical strength to the deceased. This is substantially a statement of the facts, and is sufficient to present the bills of exception relied on by appellant.

Appellant objected to the witness Tackett stating that a short time after the difficulty, which occurred out on the square, appellant returned to the drugstore where he was employed, and that he saw him in proximity to the showcase where pocketknives and cutlery were kept; that he was there behind the counter. This evidence was objected to, because there was no testimony to show that any of the knives in said showcase were used by appellant in the difficulty; and because the evidence was calculated to mislead and prejudice the jury in the trial of said cause. As stated before, it was a matter of controversy between the State and the defendant as to the knife with which the cutting was done. The testimony of this witness shows that shortly after the difficulty appellant went behind that showcase, and was engaged there for some time, and had opportunity to replace the knife that might have been used by him. The knife found on him by the sheriff was after this transaction, and, as

shown by some of the witnesses, the wounds of the character inflicted on the deceased could not likely have been produced by the knife found on his person, and when found there was no blood on said knife. Moreover, the knife seen by the witnesses, and as stated by the deceased in his statement shortly after the difficulty, was a knife with a larger and brighter blade than that found on the defendant. The testimony of the State tends strongly to show that the knife found in possession of the defendant was not the knife with which the cutting was done, and that evidently said knife must have been disposed of by appellant in some way between the difficulty and the time that he was arrested by the sheriff. When he was in the drugstore he certainly had an opportunity to make a disposition of that knife. We believe the testimony introduced was competent for the purpose indicated.

The same observations as to the testimony of this witness apply to the testimony of this witness Bradford. He testified that he kept in his drugstore, where appellant was employed, a lot of pocketknives of large size.

Appellant also objected to the introduction in evidence of the statement of deceased, made from thirty to sixty minutes after the difficulty, on the ground that same was no part of the res gestae. It appears from the statement made in the bill of exceptions that immediately after appellant cut deceased he went to his saloon, which was some sixty or seventy yards distant; that a doctor was sent for, and that before he came deceased fainted. As soon as he recovered, his wounds were dressed, and he then made a statement as to how the difficulty occurred. The witnesses place the length of time that elapsed between the difficulty and the statement at from thirty to sixty minutes, and there is nothing in the statement suggestive of any fabrication in regard to the statement. On the contrary, it appears to have been spontaneous, and as soon thereafter as deceased was in condition to tell how the difficulty occurred. Of course, a statement of this character should be as near in point of time as possible; but this is not absolutely essential. The main question is, does it appear from all the circumstances that the statement was spontaneous, and sprang out of and was a part of the transaction itself? If so, the testimony is admissible, though the statement may not have been made exactly contemporaneous in point of time with the wound inflicted. But in all such cases it must appear that the statement or declaration was spontaneous, and sprang out of and was a part of the transaction. See Fulcher v. State, 28 Texas Crim. App., 465; Lewis v. State, 29 Texas Crim. App., 201; Stagner v. State, 9 Texas Crim. App., 440; Lindsey v. State, 35 Texas Crim. Rep., 164; Ingram v. State (Texas Crim. App.), 43 S. W. Rep., 518.

There is nothing in appellant's objection to the argument of the district attorney as to the knife used by appellant. It was a legitimate argument, based on the testimony for the State in the case.

Appellant reserved a number of exceptions to the charge of the court. We have examined the same, and, in our opinion, none of them are well taken. The court gave a full charge on self-defense, and gave appellant

the full benefit of both actual and apparent danger, and instructed the jury to regard the danger from appellant's own standpoint. He also instructed them that, if appellant slew deceased, but at the time he inflicted the mortal stroke deceased had made an assault upon him, which, from the manner and character of it, etc., caused him to reasonably believe that his life was in danger, or he was in danger of serious bodily injury, he would have the right to slay deceased; and in that connection instructed them that if deceased at the time was armed with a weapon reasonably calculated to produce death or serious bodily harm, then the law would presume that the deceased intended to murder or inflict serious bodily injury upon the defendant. Appellant objects to this latter portion of the charge, because the evidence does not show that deceased had any weapon. This is true, but we fail to see how this charge could injure appellant, especially in view of the fact that he testified that he believed deceased had a knife, and was using it when he struck him.

Appellant also objects to that portion of the charge of the court on self-defense which instructed the jury that every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicated to be necessary. We think this was exceedingly pertinent to the evidence in this case, because it certainly showed that deceased used nothing but his hands and fists in assaulting appellant, and he immediately began to cut him with his knife. This was presenting to the jury the issue as to whether or not appellant used more force than was reasonably necessary to protect himself from danger. The court's charge on the subject of self-defense covered all the issues in the case, and the special charges on this subject asked by appellant were not called for. The court, moreover, gave a full charge on the cause of the death of the deceased, to the effect that, if the wounds inflicted were not mortal, and were not the proximate cause of the death of the deceased, but that he died on account of gross neglect on his own part or that of his attendants, they would acquit appellant.

It is not necessary here to discuss the court's charge on assault with intent to murder, but certainly appellant could not complain because the court gave such a charge. We have examined the record carefully, and, in our opinion, the evidence supports the verdict, and the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—This case was affirmed at the last Austin term, 1898, and motion for rehearing was presented and argued at the Tyler term, 1898. The motion and argument of appellant's counsel particularly calls in question the action of this court in holding that the statement of the deceased, made directly after the difficulty which ulti-

mately caused hs death, was erroneous.  In the original opinion we did not discuss this matter at length, but stated the question in general terms, citing authorities.  We now set forth appellant's bill of exceptions on this subject in full: "Be it remembered, that upon the trial of the above styled and numbered cause the State showed by the witness Newberry that he was standing sixty or seventy yards from defendant and deceased at the time of the difficulty, and that after the difficulty the deceased left defendant, and came toward his (deceased's) saloon, which saloon was sixty or seventy yards from the place of the difficulty; that the witness ran toward deceased, and met him about half way between the saloon and the place of the difficulty, at which time deceased remarked to witness 'that that damned son of a bitch has killed me over that coon.'  The deceased then told witness to go after the doctor for him, and witness then told deceased to give him his keys to the saloon door.  Deceased then took the keys to the door out of his left pants pocket, with his right hand, and gave the keys to the witness, and witness went on, and opened the saloon door, and turned back, and met deceased about ten steps from the saloon, and assisted deceased to sit down in the saloon door.  When deceased sat down in the saloon door, he said, 'I believe I will faint.'  Witness then fixed a blanket back in the saloon, and we put deceased upon it, at which time deceased fainted, and remained in a fainting condition for about ten minutes before he recovered; and about fifteen or twenty minutes after he recovered, and after the wounds were dressed, deceased stated to Aunt Nancy Johnson, in my presence, that he was not afraid to die; that 'some people look down on the saloon business, but I have never wronged any person out of a cent, and have tried to live honest;' and then went on to state that 'when the defendant met me he asked me if I had seen anything of his coon, and I told him I had not; and I said, "Why?" and defendant said, "some God damned son of a bitch had turpentined his coon while he had gone to dinner."  I said, "I had something to do with that, and I do not want to be called such names."  Defendant said, "If you did, you are a damned son of a bitch."  I then struck the defendant, and about the same time defendant struck me.  I knocked the defendant down, but I did not know I was cut until I tried to reach out my left hand to take hold of defendant, and found that my left arm was paralyzed.  After the defendant cut me, I saw the knife in his hand.  It was a large knife, with a blade three or four inches long, with a sharp curved point.'  The State offered the evidence of the deceased's remarks as detailed by the witness Newberry as res gestae, which statements were made between thirty and sixty minutes from the time of the difficulty.  To all of which statements of the deceased, as detailed to Mrs. Johnson, in reference to how the difficulty took place, in the presence of the witness Newberry, the defendant objects, for the reason that such statements so made to Mrs. Johnson in presence of the witness Newberry, were not admissible as res gestae in the trial of said cause; which objection on the part of defendant the court overruled, and allowed said witness Newberry to detail to the jury the statements of the deceased

made to Mrs. Johnson as to how the difficulty occurred. To which ruling of the court the defendant excepts," etc.

It will be seen from the above bill of exceptions that appellant does not object to any particular statement of the deceased, as, to wit, that he said that he was not afraid to die, etc., but the general objection urged is that the detailed statement of the deceased to Mrs. Johnson in reference to how the difficulty occurred was not res gestae. In the very able and exhaustive brief filed by appellant on motion for rehearing he urges that the length of time that elapsed between the time deceased was cut by appellant and the statement made, being about sixty minutes, is a circumstance tending to show that said statement was not res gestae; that, in addition to this, deceased went about other things, to wit, that he sent for the doctor; that he asked the witness Newberry to open his saloon door, and got his keys out of his pocket for that purpose; that he then remarked that he was about to faint, and sat down on the gallery; that after this he did faint, and was removed into the saloon; that he remained unconscious for some time; that, after consciousness returned, his wounds were dressed, and in about fifteen minutes thereafter he made the statement referred to. And as further indicative of the fact that there was a break or let-down in the continuity of his statement to Mrs. Nancy Johnson, he prefaced his statement with the remarks "that he was not afraid to die; that some people look down on the saloon business, but that he had never wronged any person out of a cent, and that he had tried to live honest." It is further insisted that said statement appears to be removed from the domain of res gestae by the fact that it was in a narrative form.

There is no difficulty as to a definition of the term "res gestae." Mr. Wharton defines "res gestae" "as facts speaking for themselves through the instinctive words and acts of participants, and not in the words and acts of participants when narrating facts. What is done or said by participants under the immediate spur of the transactions becomes thus part of the transaction, because it is thus the transaction which speaks." And at common law the res gestae was strictly confined to the transaction itself. See Whart. Ev., secs. 262-264, inclusive; Underh. Cr. Ev., secs. 95-98, inclusive. The doctrine in some of the American States has been extended beyond the very time of the transaction, and the rule in Texas is very liberal in the admission of testimony as res gestae. On this subject we quote from Lewis *v.* State, 29 Texas Criminal Appeals, 201, which is the approved doctrine on this subject, as follows: "In order to constitute declarations a part of the res gestae, it is not necessary that they were precisely coincident in point of time with the principal fact, but if they spring out of the principal fact, were voluntary and spontaneous, and made at a time so near as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence." And see Castillo *v.* State, 31 Texas Crim. Rep., 145. "The difficulty has been," as was remarked by Judge Hurt in Lewis *v.* State, supra, "in the application of the principle." And we confess that, viewing the

decisions of our court on this subject, it has been marked with great lati-
tude as to the time testimony has been admitted as res gestae. In Stagner
v. State, 9 Texas Criminal Appeals, 440, statements made twenty minutes
after the transaction were admitted. And so in Lewis v. State, 29 Texas
Criminal Appeals, 201, the statement made from a half hour to an hour
and a half after the transaction was held admissible. In Fulcher's Case,
28 Texas Criminal Appeals, 465, a declaration was admitted which was
made fifteen minutes after the shooting. In Brown's Case, 44 South-
western Reporter, 174, a declaration made fifteen minutes after the trans-
action was excluded. And so in Ford's Case, ante, p. 280, a declaration
made some fifteen minutes after the shooting was excluded. Of course,
all these cases depend upon their own peculiar facts. In those cases in
which the testimony was held admissible the judges appear to have based
their decision on the idea that the circumstances indicated a spontaneity,
while in the others there were circumstances which indicated delibera-
tion and reflection.

Another test as to what constitutes res gestae is that it is the event
speaking for itself at the time. To illustrate, if, during the difficulty, one
cry out, "Spare me!" or "Don't stab me again!" But if it is the narra-
tion of a past transaction it ought not to be admitted; as if, after a diffi-
culty between A. and B., A. narrates to C. the circumstances of the diffi-
culty in the past tense. So far as the Texas cases are concerned, we ap-
pear to have made a complete departure from this rule, for a large por-
tion of the decided cases on this question are in phraseology narratives
of a past occurrence. In Craig's Case, 30 Texas Criminal Appeals, 621,
this court recognized the difficulty of reconciling the cases, or of stating
the application of the rule to any given case. We quote from Judge
Hurt's opinion in said case, as follows: "Just when the fact or state-
ment is or is not a part of the res gestae is one of the most difficult ques-
tions to solve known to the writer. The old rule was that, to be a part
of the res gestae, the fact or statement should be contemporaneous with
the transaction; and this rule is approved by many courts of the first
ability. On the other hand, the rule has been construed so as to admit
acts and declarations occurring not contemporaneous with the transac-
tion which preceded or followed it; and when they are to be admitted or
rejected, if not coincident with the act of transaction in question, is a
question of judicial discretion of embarrassing nicety." On this same
subject we quote from Underhill on Criminal Evidence, as follows: "The
spontaneous, unpremeditated character of the declarations, and the fact
that they seem to be the natural and necessary concomitants of some rele-
vant transaction in which their author was a participant, constitute the
basis for their admission as evidence. If a sufficient period has inter-
vened between the act and the statement for consideration, preparation,
or taking advice, the statement may be rejected. The mere likelihood or
probability that the statement was the result of advice or consideration
may exclude it. Actual preparation need not be shown. * * * On
the whole, res gestae can not be arbitrarily confined within any limits of

time. The element of time is not always material. If the declarations are narrative and descriptive in their form and character, if they are not the impromptu outpourings of the mind, they should be rejected, though uttered only a few minutes after the main transactions." Underh. Cr. Ev., secs. 96, 97. And again, in order to test the spontaneity of the statement, in addition to the lapse of time, the fact that after the main transaction something else intervened, or the party engaged in some other affair prior to making the statement, would be a circumstance to exclude it. This was the rule adopted in Bradberry v. State, 22 Texas Criminal Appeals, 273. In that case the witness Haselfield lived some 200 yards from the place where the difficulty occurred. He heard the firing, and after it ceased went to the place, saw defendant hobbling around, and asked him what was the matter. Defendant told witness to catch his (defendant's) horse, and bring it to him, and he would tell him all about it. He caught defendant's horse, took it to him, which occupied about three minutes, and defendant then made the statement to him about the difficulty. The lower court excluded this statement on the ground that it was not a part of the res gestae. On appeal the ruling of the lower court was affirmed. The holding of the court was predicated on the fact that the party's mind in the interim became employed about another affair, to wit, catching his horse, and that he had time for reflection, and that this constituted a break or let-down between the main transaction and the subsequent statement, and that, consequently, the declaration was not spontaneous. Reviewing the authorities, it clearly appears to the writer that, having departed from the old rule on the subject, we really have no rule; but the admission of such testimony is predicated solely on the discretion of the judge trying the case as to what statements are or are not the spontaneous outgrowth of the main transaction; subject, of course, to review by this court. And the holding of this court on the subject seems to be somewhat confused, which usually follows when rules are abandoned. What is spontaneous belongs to the discretion of each particular judge, and is well illustrated by the old story of the chancellor's foot as a measure of the judgment of the court. In the original opinion the rule which appears to be in vogue in this State was adopted, and it was held that the statement appeared to be spontaneous, and was res gestae. In the present motion, however, our attention has been called, by the able brief of counsel for appellant, to the violation of several tests with reference to the admission of testimony as res gestae, and the authorities bearing upon this question have been discussed and reviewed. A majority of the court adhere to the view that the testimony here admitted is within the rule laid down by the authorities in this State. I am constrained to admit that some of the cases go very far towards sustaining the admission of the testimony here complained of, but I do not believe that any case goes as far as we are called upon now to extend the doctrine. The statement here was made about an hour after the main transaction, and after the parties had separated. So, in point of time, the testimony

here complained of is as far removed from the main transaction as that of any reported case. Besides this, the parties had separated. Both had left the scene of the transaction. Defendant had gone to his hotel, and deceased had gone to his saloon. More than this, the mind of the declarant had in the meantime been diverted by other affairs. He had ordered a doctor; he had given his keys to Newberry, to open the saloon for him; he remarked that he was going to faint, and did faint; he was then carried into the saloon, and remained unconscious for some length of time. After this he revived, and his wounds were then dressed. Some fifteen minutes after consciousness returned, and when a crowd had gathered around he made the statement complained of to Mrs. Johnson, prefacing it by a statement as to other matters in nowise connected with the difficulty. The statement itself as made was in narrative form, the declarant using the past tense. I believe that a number of tests erected by the law as safeguards against the admission of this character of testimony as res gestae have been violated. My brethren, however, as stated before, do not agree with me, but believe that the former opinion should be adhered to, and the motion for rehearing overruled. I deem it proper, however, to express my views on this question. In accordance with the views of the majority of the court, the motion for rehearing is overruled.

*Motion overruled.*