WILL LINDSEY v. THE STATE.

*No. 1170.   Decided November 6th, 1895.*

**1.  Continuance—Practice on Appeal.**

On appeal, an application for continuance will be held properly overruled where, in the light of the evidence adduced at the trial, it appears that it is impossible that the absent witness could have known anything of the circumstances about which it was stated he would testify, and that should he so testify his testimony would not probably be true.

**2.  Murder—Declarations of Deceased—Res Gestæ.**

On a trial for murder the declarations made by deceased within fifteen or twenty minutes after he was wounded, and while he was still at the place of the shooting, are admissible in evidence as res gestæ.

**3.  Same—Charge—Provoking Difficulty—Abandonment of—Self-defense.**

On a trial for murder, where it appeared that a previous difficulty had been provoked by defendant and his brother with deceased, but that no personal injury was inflicted, and the parties started on home, defendant with a pistol in his bosom, and deceased with a rock in his hand; and, after proceeding some hundred yards in this manner deceased renewed the quarrel, which resulted in his being shot and killed. Held:  That having charged the jury with regard to provoking the difficulty by defendant, it was the duty of the court to have further instructed them with regard to an abandonment by him, if such there was, and a renewal thereof by deceased; and that if defendant had abandoned his efforts to provoke said difficulty, and thereafter, deceased made an attack upon him which caused him to apprehend danger to life or serious bodily harm, his right of self-defense would be perfect regardless of the fact that he had previously provoked a difficulty.

**4.  Same.**

If, upon the facts stated in the above paragraph, the jury should believe that there had been an abandonment of the previous difficulty by him, then defendant could only be convicted, not on the ground that he had provoked the difficulty, but that at the time of the second difficulty he was ready and prepared for, and engaged in it willingly and not in his self-defense.   And if, in the second difficulty, deceased made no hostile demonstration, and defendant made the first attack on him, then defendant would be guilty of murder or manslaughter, according to the evidence.

APPEAL from the District Court of Palo Pinto.   Tried below before Hon. J. S. STRAUGHAN.

The appellant and his brother, Dove Lindsey, were jointly indicted and jointly tried for the murder of E. G. Ivey. At their trial they were each convicted of manslaughter, the punishment assessed against this appellant being imprisonment in the penitentiary for a term of four years and six months; and the punishment assessed against Dove Lindsey being two years' confinement in the reformatory, he being under sixteen years of age.

Will Lindsey alone prosecutes this appeal. The case is sufficiently stated in the opinion.

*Marshall Fulton,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant is this case was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of four years and six months, and from the judgment and sentence of the lower court he prosecutes this appeal. The appellant assigns as error the overruling of his motion for a continuance. The application was based upon the absence of the witness Newt Sanders, alleged to reside in Parker County. The diligence used to procure said witness was sufficient, but, in our opinion, it is not probably true that he would testify as alleged in the application. It appears from the record in this case that a number of witnesses (six or seven) were present at the time of the beginning of the difficulty between Dove Lindsey, a brother of appellant, and the deceased, which was the origin of the fight in which appellant, Will Lindsey, killed the deceased. All of these witnesses show that this altercation began at the river, as soon as the parties had crossed it in a canoe; that it occurred at night; that there was a separation at the river, Newt Sanders and three others going in an easterly direction up the railroad, and the deceased, the two defendants, and two or three other witnesses going in a westerly direction, down the railroad. The killing occurred two or three hundred yards down the railroad, and after the two parties had separated. The two persons who were with Newt Sanders, and going east, both testified in the case, and knew nothing of what occurred after the separation and in connection with the circumstances attending the killing. The witnesses with the deceased testified as to who was present, and they all concur that Newt Sanders was not there, but was with the other parties. The witnesses who went east knew nothing of the homicide until next morning. The evidence shows that Newt Sanders must have been four or five hundred yards from the scene of the killing, which, as stated, occurred at night; and taking the evidence of appellant himself, who testified in the case, and enumerates the parties who were present at the time of the homicide, it cannot be true, as is alleged in the application for a continuance, that the said Newt Sanders, the absent witness, saw or knew anything about the circumstances immediately attending the shooting; and, in our opinion, the court did not err in overruling the application.

The appellant also assigns as error the admission in evidence, over his objection, of the declaration of the deceased, made some fifteen or twenty minutes after the shooting, and while he (deceased) was there on the ground, to the effect that he struck appellant with a rock because he saw that appellant was going to shoot him. This, under the circumstances of the case, must be regarded as res gestæ and admissible.

Appellant assigns a number of errors to the charge of the court, but to our minds there is but one that need be considered. The court gave a charge on self-defense, and in that connection he also charged against appellant, limiting his right of self-defense on provoking the difficulty. The appellant excepted to this charge, and in that connection asked the following: "Mere words alone, however aggravating or vulgar in their nature, will not justify an assault; and if you find from the evidence that defendant, Will Lindsey, used no actual violence upon the deceased, and was not preparing so to do, but merely cursed and abused deceased before deceased struck him with a rock, then and in that case defendant would not be deprived of his complete right of self-defense; and if defendant, Will Lindsey, had a reasonable belief, and there was any apparent danger that deceased was about to do him serious bodily injury or take his life, and you find that defendant did not purposely and with premeditated intent bring on this difficulty, for the purpose of provoking a difficulty, you will acquit the defendant; or if you find that he had such intent, and abandoned it, and that deceased then renewed the difficulty, and defendant had a reasonable fear that his life would be taken, or serious bodily injury inflicted upon him, then, and in that event, you will find the defendants not guilty." This the court refused to give, and appellant assigns this action as error. In order to present our view with reference to the necessity of giving a charge on this subject, we will quote substantially enough of the testimony to show the shape of the case on the issue. The evidence disclosed that the two defendants, Will Lindsey, (the appellant in this case) and his brother, Dove Lindsey, together with some five or six neighbor boys, went across the Brazos river on the night in question, to some entertainment or exhibition at a schoolhouse; that, after it was over, they proceeded on their return home. Their means of crossing the river, it appears, was on a skiff or small boat, which was not large enough to bring over the entire crowd. The deceased, Ivey, and Dove Lindsey, were in the first boat load to cross the river. Dove Lindsey began rocking the boat, and an altercation arose between him and the deceased, Ivey, in regard thereto. After they had crossed the river, the altercation continued, and they kept quarreling. Deceased and one Archer went up on the bank of the river, on the railroad. Dove Lindsey remained down by the water's edge, and Ivey and Dove Lindsey continued to abuse and curse each other. Ivey threw a rock at Dove Lindsey. In the meantime the boat had recrossed, and brought over the remainder of the boys, including Will Lindsey, the appellant. When he (Will Lindsey) got over, he took up the quarrel, and endeavored to

borrow a pistol from one Wright.    Wright declined to let him have it, but he ran his hand under Wright's coat, and took the pistol off of him. The deceased, Ivey, it seems, still standing up on the bank of the railroad, saw him procure the pistol, and remarked to Archer in regard to it.    Archer and Ivey, about this time, and before the two defendants, with Wright and Streep, came up, left, and proceeded down the railroad some distance.    The defendants called to Ivey. to stop, denouncing him as a "damned coward."    Ivey and Archer stopped, and the defendants and Wright and Streep caught up with them, the other boys in the meantime having gone the other way up the railroad, in an easterly direction, as before stated.    It appears that, when the two defendants caught up with Ivey, they renewed the altercation with him, and cursed and abused him.    Ivey stated that he would fight them a fair fight.    The defendants stated that they would not fight a dog fight, but they would fight him like a brave man.    Dove Lindsey shook his fist in deceased's face, and denounced him as a coward, and told his brother Will to punch him in the eye.    Wright and Archer then interfered, and it appears that Will Lindsey then told Ivey, if he was not prepared to fight a brave man's fight, to "hush up and let's go on."    The altercation ceased, and nothing further was said, until they had gone along that way about 100 yards.    The deceased had, at the river, it appears, picked up a rock, and had it with him.    The defendant, Will Lindsey, had the pistol, that he had got from Wright, in his hand and in his bosom, and had that all of this time, and continued to hold it. As stated, when they had gone about 100 yards, nothing having been said in the meantime between the parties with reference to the difficulty, the deceased, Ivey, turned and said, that there had been a damned sight of cursing not to be any fighting.    Will Lindsey, appellant, then said: "Do not talk too big about it, you damned coward, you."    Deceased then said, "God damn you," and immediately, the witnesses say, they heard a blow struck, and almost simultaneously a pistol was fired.    The deceased advanced on the defendant, Will Lindsey, who fell off the railroad track, and deceased on top of him, and Dove Lindsey jumped on top of deceased.    After or about the time they fell, another shot was fired.    When the parties separated, it was found that the deceased was shot in the region of the heart, and the defendant, Will Lindsey, had a severe wound on or about his right eye, which bursted the eyeball out. This is a summary of the evidence and the incidents attending the killing.

If the killing had occured when the appellant, Will Lindsey, and his brother first overtook the deceased and began the altercation with him, the charge of the court of self-defense, and the limitation of same by the charge on the provoking of the difficulty on the part of appellant, might have been sufficient; but in this case, according to the unbroken testimony of all the witnesses, the altercation had ceased, and the parties had thereafter proceeded some 100 yards on their way home.    Nothing had been said in the meantime, and no effort was made by the appellant in continuation of his acts of aggression, or in renewal of the

difficulty. The deceased, himself, it appears, was the first to use any expression calculated to renew the quarrel. In view of this cessation of the difficulty, in our opinion, it was clearly the duty of the court, having already charged on the subject of provoking a difficulty by the appellant, to give a charge to the jury on the abandonment thereof, and the renewal on the part of the deceased of the difficulty, so that the jury might pass intelligently on this phase of the case; otherwise, they were liable to go back to the provocation by the appellant, which had occurred on the route, some 100 yards back, and to regard the provocation at that place as absolutely negativing his right of self-defense. The cessation or abandonment of the difficulty by the appellant was a phase of the case made by the evidence, and it was the duty of the court to present it to the jury. At least, the jury should have been permitted, under a proper charge, to say whether or not there was an abandonment of the difficulty, if originally provoked by him. If there was, the appellant in this case could only be convicted, not on the ground that he had provoked the difficulty, but that at the time of the difficulty he was ready and prepared for it, and willingly and voluntarily engaged in it, and did not fight in his self-defense. If the jury, trying the case, had believed from the evidence that the appellant when he first overtook deceased, provoked a difficulty with him for the purpose of killing him, or having a fight in which one or both might be killed, yet, if they believed said altercation had ceased, and appellant had abandoned his effort to provoke a difficulty, and that thereafter, and when the parties had gone towards home some 100 yards, the deceased made an attack upon appellant, which caused him to apprehend danger to his life or serious bodily injury to his person, then his right of self-defense was perfect, regardless of the fact that he had previously provoked a difficulty. Brazzil v. State, 28 Tex. Crim. App., 584. If, however, the deceased made no hostile demonstration against appellant, from which it reasonably appeared to him that his life or his person was in danger, and appellant made the first attack on deceased (as the declaration of deceased to the effect that he struck appellant because he was in the act of shooting him tended to show), then appellant would be guilty of murder or of manslaughter, according to the proof; and both these phases of the case should have been given in charge to the jury, and, for the failure to so charge the jury, the judgment in this case is reversed and the cause is remanded.

*Reversed and Remanded.*

DAVIDSON, Judge, absent.