## John Chapman v. The State.

### No. 2469. Decided December 4, 1901.

**1.—Murder by Torture—Charge.**

On a trial for murder, the court did not err in instructing the jury that if defendant was present, etc., and did pour turpentine or other inflammable liquid upon the person of deceased, and did ignite with a match said fluid or liquid, thereby causing the death of deceased, he would be guilty of murder in the first degree by torture.

**2.—Same—Charge—Principal.**

On a trial for murder, it was error for the court to charge the jury that defendant would be guilty as principal of murder by torture if he was present and knew that the offense was about to be committed, and was the owner or one of the owners of the place in which said act occurred. The court should have instructed the jury as to principals, and if defendant was present, and knowing the unlawful intent of the other parties, naming them, adopted said intent, and while so present aided by acts or encouraged by words or gestures and consented to the commission of the crime, then and in that event he would be guilty as a principal. Bare presence at the time and place, nor the fact that defendant was owner or part owner of the place, is not proof positive that he was acting together with the others in the commission of the crime.

**3.—Principal—What Constitutes.**

In order to constitute one a principal in crime, he must not only have been present, but he must have encouraged by acts or gestures, either before or at the time of the commission of the offense, with full knowledge of the intent of the parties committing it. There must be some consent or co-operation of some character on the part of a person present at the commission of an offense before he would be guilty of any offense.

**4.—Murder by Torture—Presence and Acts of Defendant.**

On a trial for murder, where, if defendant simply poured turpentine on deceased without intent to set fire to and thereby kill him; or if thereafter some one else set fire to deceased and defendant did not adopt the intent and agree to the unlawful act, the fact that he poured the turpentine alone would not constitute him guilty of the murder.

**5.—Same—Improper Conduct of State's Counsel.**

On a trial for murder, where it appeared that deceased was killed by having turpentine poured over him and set fire to, and a witness for defendant had testified that to the best of his judgment the defendant was the man who rushed in and tried to extinguish the fire with his hands, whereupon the State's coun-

-sel seized one of defendant's hands, in the presence of the jury, and called to the witness to "Look at this hand and tell the jury if you see any burns or scars on it now;" Held, such character of procedure should not be indulged or permitted.

**·6.—Same—Declarations of Deceased—Res Gestae.**

Declarations and statements by deceased to a physician about an hour and a half after the burning, to the effect that some one threw turpentine on him, whom he did not know, and that he had $26 on him at the time, were admissible in evidence as part of the res gestae. Following Freeman v. State, 40 Texas ·Criminal Reports, 546.

**7.—Same.**

Declarations and statements of deceased in answer to questions made four hours after his burning were no part of the res gestae and were inadmissible.

**8.—Murder by Torture—Evidence of Intent.**

On a trial for murder by torture by burning, it is competent, as going to show a malevolent intent on the part of defendant and his codefendant, that shortly before the burning defendant's codefendant and partner in the saloon took a piece of grass rope from under his apron and threw it under the bar; and that on the second day after the burning the said piece of grass rope was found under the bar. It was also competent to prove that a small bottle, which smelled like it had chloroform in it, was found in the saloon, as tending to show deceased was stupefied by some character of drink.

**·9.—Same.**

On a trial for murder, where it appeared that deceased was robbed before he was murdered, it is competent to show that immediately after the crime, defendant, when arrested, had money upon his person, although such money was not identified as belonging to deceased.

**10.—Conduct of Trial—Rights of Accused.**

A defendant in a criminal prosecution should be accorded a fair and impartial trial under the laws of this State, and, whether he be guilty or innocent, this right the law and Constitution of this State guarantee him.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. Chas. F. Clint.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment, in the first count, charged appellant with the murder of C. P. Bane, on the 3d day of December, 1900, by burning him to death, and causing him to be burnt to death with fire. In the second count it charged that the murder was committed by pouring turpentine and gasoline, inflammable fluids, upon the clothing of the said C. P. Bane, and igniting and setting fire thereto, thereby inflicting burns and injuries from which he died. The third count charged, that the murder was committed by pouring upon the clothing of said C. P. Bane certain inflammable oils and fluids, the name and kinds of which is to the grand jurors unknown, and by igniting and setting fire thereto whereby he sustained such bodily injuries and burns as caused his death. The fourth count charged a burning by fire and torture which caused ·death. The fifth count charged that the murder was committed by Eugene Faulkner, Will Renner, Will Pruitt, and Drew Pruitt, and that ·defendant, John Chapman, advised, commanded, encouraged, aided, and abetted therein the commission of the murder, he not being personally present when the offense was committed. The sixth count charged that

said murder was committed by the parties above named by pouring turpentine and gasoline upon deceased's clothing and setting fire thereto; and that defendant aided and encouraged them in so doing, etc., he not being personally present, etc. The seventh count was similar, except that it charged that the name and kind of inflammable oils and fluids were unknown to the grand jurors. The eighth count was similar, except that it charged that the murder was committed by fire and torture.

This is a companion case to the case of Eugene Faulkner v. State, ante, page 311. In the Faulkner case will be found, in Judge Henderson's opinion, a concise but most lucid resume of the important facts attendant upon the murder of the deceased, C. P. Bane, and no further general statement is required.

The exceptions taken by appellant to supposed errors committed on the trial of this case are so fully stated in the opinion below as to need no further illustration.

*Robert B. Allen, Edgar B. Terrell,* and *Ford & Crawford,* for appellant.—On a trial for murder, it is the duty of the court to submit to the jury the law applicable to murder in the second degree, unless the evidence establishes as a fact that the killing was done upon express malice, or that it was done in the perpetration, or the attempt at the perpetration, of certain offenses named in article 711 of the Penal Code. Edmondson v. State, 41 Texas, 497; Benevides v. State, 14 Texas Crim. App., 385; Gomez v. State, 15 Texas Crim. App., 327; Conner v. State, 23 Texas Crim. App., 379.

When a homicide occurs in the performance of an unlawful act, and the unlawful act does not rise above the grade of a misdemeanor, and when the evidence is of a character that would warrant the jury in concluding that, in the performance of the act, there was an apparent danger of causing the death of the person killed or some other, but no apparent intention to kill, it is the duty of the court to instruct the jury as to the law applicable to negligent homicide in the second degree. Robins v. State, 9 Texas Crim. App.; Howard v. State, 25 Texas Crim. App., 686.

Bill of exceptions number 13 shows that the witness P. J. Donovan was placed upon the stand by the defendant, and examined by defendant's counsel, and cross-examined by Stillwell H. Russell, special counsel for the State. During the examination of said witness, the witness testified that a man who, in his best judgment, was the defendant John Chapman, rushed in through the front door of the saloon, and seized the burning man and threw him on the floor, and tried to extinguish the fire. Russell asked the witness if defendant had his hands in the flames, to which question the witness answered that he did. The defendant at that time was seated between his own counsel and Russell. When the witness Donovan testified in answer to Russell's question, that the defendant had his hands in the flames, Russell turned and seized

one of the defendant's hands, and jerked it up violently in the presence of the jury, and before the defendant could prevent it, and where the jury could see it, and said to the witness: "Look at his hand and tell the jury whether or not you see any burns or scars on it now?" The defendant's counsel objected to such unlawful conduct on the part of State's counsel, and Russell then stated to the court, in the presence and hearing of the jury: "Yes, sir; I offer the defendant's hands in evidence before this jury. I have the right to do it." Thereupon defendant's counsel objected to such conduct on the part of State's counsel and such language in the presence and hearing of the jury, and moved the court to instruct the jury to totally disregard the actions, as well as the questions of the State's counsel to the witness. The court sustained the objection to the question, but overruled the motion of defendant's counsel, and refused to instruct the jury to disregard the actions and questions and statement of the State's counsel as requested by defendant's counsel. To which ruling of the court, defendant then and there in open court excepted for the reasons fully set out in the bill of exceptions.

In a criminal prosecution the accused can not be compelled to give evidence against himself. Bill of Rights, sec. 10; Code Crim. Proc., art. 4; Gallaher v. State, 12 S. W. Rep., 1095.

In order for any statement made by the deceased to be admitted in evidence as a dying declaration, it must appear (1) that at the time of making such declaration the declarant was conscious of approaching death, and believed that there was no hope for his recovery; (2) that such declaration was voluntarily made, and that it was not made in answer to interrogatories that were calculated to lead the deceased to make any particular statement. Edmondson v. State, 41 Texas, 497; Lister v. State, 1 Texas Crim. App., 740; Hunnicutt v. State, 18 Texas Crim. App., 498; Ledbetter v. State, 23 Texas Crim. App., 247.

The testimony as fully set out in bill of exceptions number 14 affirmatively shows that the deceased was wholly unconscious of his approaching death, and that on the contrary the deceased insisted that he was not going to die, but that he would recover. The bill further shows on its face that the statements of the deceased were not voluntary, but that they were brought out by leading and suggestive questions on the part of the witness Dr. McFerrin. No argument is deemed necessary to show that the statements made by the witness to Dr. McFerrin, at the city hospital are not admissible in evidence as dying declarations.

Before the declaration of any party can be admitted in evidence as res gestae, it must appear that the declarations are the facts talking through the party, and not the party talking about the facts. The declarations must be voluntary, spontaneous and instinctive; they must spring out of the principal fact, and tend to explain it, and they must be made at such a time as to preclude the idea of deliberate design. Hobbs v. State, 16 Texas Crim. App., 517; Bradberry v. State, 22 Texas

Crim. App., 273; Powers v. State, 23 Texas Crim. App., 42; Neyland v. State, 13 Texas Crim. App., 536.

Bills of exceptions numbers 1, 2, 3, 4, and 5 each complain of the action of the court in refusing to give in charge to the jury certain special charges prepared and requested in writing by the defendant, instructing the jury to disregard highly improper and incendiary remarks made by the counsel for the State in their arguments to the jury. Mr. Sumners, the county attorney, in his argument to the jury said: "The people of this county and the law will never be satisfied until this man is convicted. You are the men to whom the law and the people of this county look for the enforcement of the law. The law is the only thing that protects your lives, and if you convict in this case, a most righteous law will be vindicated by a most just verdict." Again Mr. Sumners said: "The people of the northern part of the county are willing to leave this case to you. When juries do their duty there will be no resort to mob violence. The people look to you for the enforcement of the law." Stillwell H. Russell, special prosecutor, in the closing argument to the jury said: "No white man has ever been hung in Dallas County. Let one white face stand upon the scaffold and it will mark a change in Dallas County. Do not hang any more insignificant negroes. If you will hang this man it will put a stop to doping and murder in Dallas County." Again, in his closing argument to the jury, Colonel Russell said: "Nothing but the mercy and patience of the people ever permitted you [pointing to the defendant] to have a trial before the law."

The court erred in that part of the charge complained of in the ninth clause of the motion for a new trial and bill of exceptions number 8, in which he instructed the jury as follows: "If you believe from the evidence, beyond a reasonable doubt, that in Dallas County, Texas, on or before December 3, 1900, that any person or persons bought turpentine or other inflammable fluid and carried it to the saloon of Chapman & Faulkner, and that said turpentine or other such fluid was poured upon the body of the said C. P. Bane, by any person or persons, and that the said turpentine or other inflammable fluid was set on fire by an ignited match, by any person or persons, and that the defendant was present in said saloon and knew that the said turpentine or other inflammable fluid was poured or being poured or placed upon the said Bane by any person or persons, and the said match ignited and fired the said turpentine or other inflammable fluid by any person or persons, and that such act of setting afire the said turpentine or other inflammable fluid by any person or persons might probably result in the death of said Bane, and that the said defendant then and there reasonably knew that such act might so probably result, and that the defendant was then and there the owner, or one of the owners, of the said saloon, and that the said burning of the said Bane occurred in said saloon, and caused the death of the said Bane, then, in that event, the defendant would be guilty as a principal of murder in the

first degree, by torture, whether he participated in the said act or not, and whether it was the intention to kill the said Bane or not, or whether the said Bane had been robbed or not; and without reference to what the unlawful intent of setting the said Bane on fire might have been, and you should so find and frame your verdict as directed above."

A charge must not assume any fact as proved against the defendant, no matter how strong the evidence may be. Long v. State, 1 Texas Crim. App., 466; Brown v. State, 3 Texas Crim. App., 294; Webb v. State, 8 Texas Crim. App., 115; Babb v. State, 8 Texas Crim. App., 173.

The mere presence of a party at the time and place of the commission of an offense, and the mere knowledge that an offense is about to be committed will not make the party a principal thereto. Neither will his knowledge that an offense is being committed or has been committed, nor will his failure to give alarm, his silence, inaction, or supposed concealment of an offense, constitute him a principal thereto. Golden v. State, 18 Texas Crim. App., 637; Truitt v. State, 8 Texas Crim. App., 148; Philips v. State, 26 Texas Crim. App., 228; Ring v. State, 42 Texas, 282; Burrill v. State, 18 Texas, 713.

To constitute one a principal with others in the commission of a crime, there must be a combination of both act and intent. He must act together with the others in the commission of an offense, knowing their unlawful intent. There must be a participation in the felonious design, or at least, the offense must be within the compass of the original intention. Burrill v. State, 18 Texas, 732; Welsh v. State, 3 Texas Crim. App., 413; Roundtree v. State, 10 Texas Crim. App., 110; 1 Chitty Crim. Law, p. 258; Trimble v. State, 33 Texas Crim. Rep., 397; Guffee v. State, 8 Texas Crim. App., 187.

Under the facts of this case, before the defendant can be deemed guilty as a principal offender, is it not necessary for the record to establish one of the following propositions? First, that he was guilty of acting together with those who actually committed the offense; or second, that being present and knowing the unlawful intent, he aided by acts, or encouraged by words or gestures, those actually engaged in the commission of the unlawful act; or, not being actually present, that he kept watch so as to prevent the interruption of those engaged in committing the offense; or, third, that he advised or agreed to the commission of the offense, and was present at the time it was committed. If either of the above propositions was established, then it follows that the defendant must at least have participated in the unlawful design, and then, of course, he would be responsible for whatever followed within the compass of the original intention. It being essential for the State to establish one of these propositions in order to make the defendant guilty as a principal offender, then is it not true that the jury were misled by the instruction of the court to the effect that the defendant would be guilty as a principal of murder in the first degree by torture, whether he participated in the said act or not?

*J. C. Muse, Stillwell H. Russell,* and *Rob't A. John,* Assistant Attorney-General, for the State. [No briefs for the State found in the record. Reporter.]

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

This is a companion case to that of Faulkner v. State, ante, page 311.

In bill of exceptions number 7, appellant complains of the following portion of the court's charge: "If you believe from the evidence beyond a reasonable doubt that in Dallas County, Texas, on or about December 3, 1900, the defendant, either alone or as a principal with others, did steal or was present at the stealing of money and shoes, or either, from the person of C. P. Bane, and did pour turpentine or other inflammable liquid upon his person, or was present when turpentine or other inflammable liquid was poured upon him, and did ignite with a match said fluid or liquids, or was present when the same was done by others; and that he (defendant) did then and there know of such theft, turpentining and setting on fire of said C. P. Bane, and was the owner or one of the owners of the place in which said act occurred, then he (defendant) would be guilty, as a principal, of murder by torture, in the first degree, and you should so find, and frame your verdict as above directed." Appellant's objections are: (1) Because the language used is upon the weight of evidence; (2) because the issue of murder by torture is not raised by the evidence; (3) and, if raised, should have been submitted to the jury as a question to be determined by them from all the evidence in the case; (4) because in applying the law to the facts the court permits the jury to convict defendant as a principal if they believe beyond a reasonable doubt that he was present and knew that the offense was about to be committed, and was the owner, or one of the owners, of the place in which said act occurred, and that regardless of whether or not defendant was acting together with others who actually committed the offense. In other words, the court makes the mere knowledge that an offense is being committed, or about to be committed, together with defendant's presence and ownership, or part ownership, of the place where the offense occurred, sufficient to constitute defendant a principal in the commission of the offense. We think the issue of murder by torture is raised by the evidence, and the definition of torture as contained in the court's charge is correct. Nor do we think the court assumes in the charge that if death result, the killing would be murder by torture, for the court had told the jury what was murder by torture, and then tells the jury if defendant did pour turpentine or other inflammable fluid upon his person, etc., and deceased was burned up, it would be murder by torture. The vice in this charge is embodied in the last contention of appellant. The mere fact that appellant may have been owner or part owner of the saloon where the burning occurred would not make him guilty of the murder, and such

should not have been embodied in the charge. The most that such circumstances could be used for would be as tending to show guilt. Certainly the fact that appellant owned the house would not per se establish that he was particeps criminis to murder committed in said house. It might be used by the jury as a circumstance in passing upon the question as to whether appellant co-operated, consented, and conspired with the other persons in the commission of the crime; but, being a mere circumstance, it would not require a charge by the court thereon. We think the charge of the court is erroneous, as contended by appellant, for it makes the bare presence and knowledge on his part that an offense was about to be committed, and that he was the owner or part owner of the place, proof positive of the fact that he was acting together with others in the commission of the offense. Certainly the presence of a person at the place where the crime is committed is a prerequisite for the conviction of such party as a principal. Knowledge on the part of the person that the crime is being committed is also a prerequisite to his guilt. But neither of said facts would necessarily establish appellant as a principal to the crime with which he was charged. The court should have instructed the jury, after defining principals as laid down by the statute, that, if defendant was present, knowing the unlawful intent of the other parties, naming them, and that he adopted said intent, and while present he aided by acts or encouraged by words or gestures and consented to the commission of the crime, then, in that event, he would be guilty as a principal. It is not necessary that the principal should do some act at the time, aside from being present, in order to constitute him a principal, but he must encourage by acts or gestures, either before, or at the time of the commission of the offense, with full knowledge of the intent of the parties who commit the offense, otherwise he can not be convicted as a principal.

By bill of exceptions number 8 appellant complains of the following portion of the charge: "If you believe from the evidence, beyond a reasonable doubt, that in Dallas County, Texas, on or before December 3, 1900, that any person or persons bought turpentine or other inflammable liquid, and carried it into the saloon of Chapman & Faulkner, and that said turpentine or other such fluid was poured upon the body of said C. P. Bane by any person or persons, and that said turpentine or other inflammable fluid was set on fire by an ignited match by any person or persons, and that defendant was present in said saloon, and knew said turpentine or other inflammable fluid was poured or being poured or placed upon said Bane by any person or persons, and said match ignited, and fired said turpentine or other inflammable fluid by any person or persons, and that such act of setting afire said turpentine or other inflammable fluid by any person or persons might probably result in the death of said Bane, and that said defendant then and there reasonably knew that such act might so result, and that defendant was then and there the owner or one of the owners of said saloon, and that said burning of said Bane occurred in said saloon, and caused the

death of said Bane, then, in that event, defendant would be guilty, as a principal, of murder in the first degree, by torture, whether he participated in the said act or not, and whether it was intended to kill the said Bane or not, or whether the said Bane had been robbed or not; and, without reference to what the unlawful intent of setting the said Bane on fire may have been, you should so find and frame your verdict as above directed." This charge is clearly erroneous. The fact that appellant should have consented to the pouring of turpentine upon the person of deceased would not per se make him guilty of murder. In all prosecution for crime under our law the gist of every offense is the intent of the defendant. If defendant poured fluids upon the person of deceased without any thought or expectation that some one else would ignite the turpentine, and thereby cause the death of deceased, he would not be guilty of any grade of offense higher than a misdemeanor. In order to make appellant guilty he must adopt the intent of that party and the proof must satisfy the jury beyond a reasonable doubt that Chapman, while present and knowing the unlawful intent of the other parties, assisted them not only in pouring turpentine, but in all other criminal acts leading up to the destruction of the life of deceased, and adopted said acts as his own. The conclusion of the above clause: "Then, and in that event, defendant would be guilty, as a principal, of murder in the first degree, by torture, whether he participated in said act or not, and whether the said Bane had been robbed or not, and without reference to what the unlawful intent of setting the said Bane on fire may have been." This is clearly contradictory of the law of principals as given by the court in the first part of the charge. Certainly, if appellant did not participate in the crime, he would not be guilty; and if he did not intend to kill deceased he would not be guilty. But if appellant, either alone or acting with others, placed turpentine upon deceased, which turpentine was by appellant or the others with whom he was acting set on fire, and appellant reasonably expected that death would ensue from said act, and, so believing, set fire to the said Bane, then appellant and those who participated with him in the commission of the offense would be guilty as charged by the court, of murder in the first degree. But, if he poured turpentine upon the person of deceased without such intent, he would not be guilty, and the court should have so charged. Furthermore, the court should have told the jury that the fact defendant poured turpentine upon the person of deceased, and was present when some one else set fire to deceased, and did not adopt the intent and agree to the unlawful act, either by words or action, appellant's presence and the fact that he poured turpentine alone would not constitute him guilty of murder. We have repeatedly held that presence and knowledge that an offense is about to be committed or is being committed would not per se render such person guilty as a principal to the commission of the offense, but there must be some consent and cooperation of some character on the part of the person present in the commission of the offense, before he would be guilty of any offense.

These principles of law should have been applied by the court to this phase of the case.

In his motion for new trial appellant insists that the evidence called for a charge on murder in the second degree and negligent homicide. We do not think so. The evidence does not raise any degree of murder except murder of the first degree.

Bill number 13 complains that while P. J. Donovan was on the stand and being cross-examined by counsel for the State the witness testified that a man, who, in the best judgment of witness, was the defendant John Chapman, rushed in through the front door of the saloon, and seized the burning man, and threw him to the floor, and tried to extinguish the fire. State's counsel asked the witness if defendant had his hands in the flames, to which the witness answered that he did. Defendant at this time was seated between his own and State's counsel. And when the witness so testified the State's counsel turned and seized one of defendant's hands, and jerked it up violently in the presence of the jury, and before defendant could prevent it, and where the jury could see it, and said to witness, "Look at this hand and tell the jury whether or not you see any burns or scars on it now." Defendant's counsel objected to such unlawful conduct on the part of State's counsel, and State's counsel stated to the court, in the presence and hearing of the jury: "Yes, sir; I offer the defendant's hands in evidence before this jury. I have a right to do it." We do not think this character of procedure should be indulged or permitted. If defendant did not have scars on his hands, this fact could have been proved without him "being jerked up violently in the presence of the jury."

Bill of exceptions number 14 presents the following: "Dr. McFerrin, assistant city physician, was permitted to testify, over appellant's objections, that receiving a call at the city hospital between 12 and 1 o'clock, they went to the saloon where the burning occurred, which was about a mile and a half from the city hospital, and reached the saloon in about twenty-five minutes. We examined the deceased and dressed his wounds at the saloon. He was burned all over from his knees up. He was so badly burned that his body was hard and crisp, and parts of his body were brittle, and the burned flesh could be knocked off with the fingers. He was placed in the ambulance, and carried to the hospital. He suffered intensely, and to such an extent that it was difficult to keep him in one position. He was constantly turning and twisting. His body was nude and we covered it with gauze dressing, and had sheet and blankets spread over him. He made no statement to anyone on the way to the hospital. Witness gave him a hypodermic injection of a quarter of a grain of sulphate of morphine before leaving the saloon. It took about half an hour to reach the hospital, and after arriving there we changed the dressings, occupying about twenty-five minutes time. During all of that time he was still suffering greatly. There was no break in his agony and suffering at any time. After the second dressing

at the city hospital he was given aother hypodermic injection similar to the previous one. The morphine seemingly had no effect on him. This was due to his suffering and agony. About an hour and twenty-five minutes after receiving the telephone call, and after the second dressing at the hospital, witness asked deceased 'if he had any coal oil, or gasoline, or turpentine, or anything of that kind on him at the time he caught fire;' and he replied, 'No; that he didn't have anything at all.' Witness then asked him 'if some one had thrown this on him,' and he said, 'Yes;' and he was then asked 'if he knew who they were,' and he replied 'he did not know, but that he would know them if he saw them.' Witness then asked 'if he had any money on him at the time,' and he said that 'he had $26.' Witness then told him he could not get well, and deceased said nothing further at that time, though he repeatedly stated, both before and after this conversation, that he was not going to die. About two hours and a half after deceased was brought from the saloon, witness had another talk with him, which conversation was a little more than an hour after the one just detailed. At the time of this conversation witness was dressing deceased's wounds, and greasing them with vaseline, and deceased was suffering greatly. There was no diminution of his suffering until about 4:30 or 5 o'clock, when he became delirious, and after that did not recognize any one, and died about 6 o'clock. In the examination at the saloon we found his eyes were burned out. His suffering was unabated up to and after witness had both conversations with him. When witness had the second conversation, he asked 'if he had a nickel with a hole in it,' and deceased said that he had a disfigured nickel. Witness asked him 'How this nickel was disfigured,—if it had a hole in it,' and he said, 'Yes.' Witness then asked him 'if he knew any one that was in the saloon,' and he said he did not, but contended he would know them if he could see them. He said that one man was tall, over medium height, and had either a black mustache or a brown mustache,—witness not recollecting which; that there was one small man present; and he said he had been playing something some time before; witness believes he said it was pool. At the time of this last conversation he was still suffering extreme agony, and there was no diminution whatever in the extent of his suffering." We think the first conversation comes within the rule laid down by us in Freeman v. State, 40 Texas Criminal Reports, 546, where the principles of law governing this character of testimony were entered into. The second conversation, however, relating to the disfigured nickel, we do not think comes within the rules of res gestae. It has none of the elements of "instinctiveness or spontaneity," which are two of the chief characteristics of this kind of testimony. The answers of deceased were in response to leading questions asked him, and a long while after he had reached the hospital, some distance from the saloon.

. Bill of exceptions number 16 reserved by appellant complains that Will Pruitt testified: "When my brother, Drew Pruitt, and myself

got to the saloon of Chapman & Faulkner, we went in to warm. Nobody was in the front room. We walked back to the stove in the back room. John Chapman, Eugene Faulkner, Bane, and the man by the name of Young were all back at the stove. Chapman asked us, after we stood there and talked a few minutes, to take a drink. We walked in to the bar, and Faulkner went around behind the bar to serve the drinks. When he got behind the bar, he took a piece of grass rope out from under his apron and threw it under the bar. After that he picked it up again, and threw it up further towards the end of the bar." And the witness Kirby testified "that on the second day after the burning of Bane he was in the building where the burning occurred, and found a piece of grass rope under the bar." The piece of rope so found was introduced in evidence over the objections of appellant. Appellant insists that said testimony was irrelevant and highly prejudicial, as there was absolutely no evidence on the part of said witness to connect the piece of rope in question in any way with the transaction resulting in the death of Bane; that the evidence was calculated to mystify and mislead the jury. We do not think appellant's position is correct. It appears from the record that the State offered this testimony as a circumstance to show some malevolent intent on the part of Faulkner towards deceased. It may be a vague circumstance to establish this fact, but, being a part and parcel of the res gestae of the transaction as detailed by the witnesses, it was admissible as illustrative of said intent, and was admissible for that purpose, to be given its proper weight by the jury. The same may be said with reference to the small bottle found by witness Kirby in the saloon, which smelled like it had chloroform in it; it being admissible as showing the intent of appellant, and as a circumstance tending to show deceased had been stupefied by some character of drink. The probative force of said circumstance would not render the same inadmissible. If the circumstance is meager, it would still be admissible as going to prove a fact germane to the transaction.

The seventeenth bill of exceptions complains that the court permitted John Willie and Jim Brannon to testify that shortly after the burning of Bane they arrested appellant, and carried him to the city hall, searched him, and found on his person $61.85, $31 of which was in paper currency and the balance in silver; and they also found on the person of defendant a nickel with a hole in it. The nickel was identified by the witnesses as the one taken from the person of defendant. Appellant insists said testimony was not admissible, because none of the money was shown to have been in the possession of deceased, and was not shown to have any connection with the burning of deceased. The proof tended to show that deceased had been robbed prior to the time the turpentine had been poured on him. The fact that appellant was found with money in his possession immediately after the robbery might be a circumstance to prove the fact that deceased had been robbed, although the money may not have been identified as the money of deceased; yet this

would go to its probative force, and not to the admissibility of the testimony.

Appellant has reserved various bills of exception to the argument of State's counsel. In view of the disposition of this case, we only deem it necessary to say that counsel should not permit their zeal in the prosecution or defense of parties to force them beyond the decorums and proprieties of the profession. The argument should be limited to the testimony adduced upon the trial of the case. As to what the citizenship may have done under any particular contingency with reference to the guilt or innocence of defendant has nothing to do with his trial. Be he ever so guilty, under the beneficent principles of our law he is entitled to a fair and impartial trial before a jury upon the law and testimony, which testimony must be adduced under the rules of evidence established centuries ago, and approved by the consensus of wisdom of all courts of all countries. We do not deem it necessary to pass upon the guilt or innocence of appellant. Suffice it to say that a bare inspection of this record will disclose the fact that he has not been accorded a fair and impartial trial under the laws of this State, and, whether he be guilty or innocent, this right the law and Constitution of this State guarantee him. It is our duty to see that these rights are awarded and accorded him in the courts.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.

[Note.—The State's motion for a rehearing was overruled without a written opinion.—Reporter.]