Harold Ray POWERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 47630.

Court of Criminal Appeals of Texas.

April 24, 1974.

W. B. Wright, Cisco, for appellant.

Emory Walton, Dist. Atty., Eastland, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is from a conviction for murder with malice aforethought where the punishment was assessed by the jury at one hundred one (101) years.

Appellant's trial was conducted in Eastland County following a change of venue from Brown County, where the offense was alleged to have occurred.

At the outset appellant complains of the admission of an extraneous offense into evidence by virtue of inclusion in his extrajudicial confession to the offense charged.

A recital of the facts is necessary for the proper disposition of this contention.

The record reflects that the 23 year old appellant was on leave from the United States Navy at the time of the alleged offense and was staying at his mother's house in Brownwood. On November 30, 1970, he borrowed his sister's 1964 Ford stationwagon and drove to a relative's home, where he drank some beer and traded his .30–.30 caliber rifle and some cash for a .22 caliber rifle and an Italian made rifle. Thereafter, he proceeded to a private club where he chanced to meet the deceased, Gordon Bengston, who had flown into Brownwood that afternoon and had registered at the Riverside Motel. After some drinks, the appellant and Bengston drove in appellant's borrowed vehicle to The Chart Room at the Flagship Inn on Lake Brownwood, where they continued to drink with Bengston buying the drinks. After midnight, they drove towards Brownwood, but turned off the Brownwood-Cross Plains Highway onto the Baptist Encampment Road, and after about one-half mile they stopped to urinate. After the appellant was unable to start the stationwagon, they walked, looking for house lights and a telephone. Being unsuccessful, they returned to the vehicle, which still would not start. Bengston continued to complain about being stranded. Appellant removed the .22 caliber rifle from the vehicle and shot Bengston in the back of the head. Bengston fell forward and started crawling towards the appellant, who then struck him in the head with the rifle butt. When Bengston rolled over on his back, appellant pulled out a pocket knife and stabbed him in the throat and then slashed his neck, which act resulted in hemorrhaging, which medical testimony showed was the cause of death. Appellant went through Bengston's pockets and took some money, a memo book, motel key, etc., but overlooked most of Bengston's cash. He then dragged the body through the grass and attempted to throw it over a fence, but could not because the body was too heavy for him.

Appellant then walked to the main highway, caught a ride into Brownwood, where, according to his confession, at about 2:30 a. m. he broke into a woman's clothing store and took some wigs, pantyhose, a dress, perfume, and some coins, etc. He then proceeded to his mother's house two and one-half blocks away, leaving the items taken on the front porch. Early the next morning he was awakened by his sister, who wanted her stationwagon the appellant had borrowed. Appellant went to Buddie's Super Market and called a taxi cab, which carried him seven miles out to the Baptist Encampment road from which point he walked to the spot where he left the stationwagon. There he encountered officers already on the scene who arrested him for public intoxication and later charged him with that offense and the offense of murder. At the time he was

booked at the jail it was discovered he was wearing pantyhose under his clothes. The confession was taken from the appellant in the late afternoon.

Prior to trial the appellant filed a motion in limine requesting that the court excise from the confession any reference to the offense of burglary, contending it was an extraneous offense in no way connected with the alleged offense of murder. The motion was overruled. Prior to the introduction of the confession into evidence, the appellant repeatedly objected to the admissibility of the extraneous offense. The confession in its entirety was introduced into evidence in the State's case in chief.

In Young v. State, 159 Tex.Cr.R. 164, 261 S.W.2d 836 ( 1953), it was stated:

"The general rule in all English speaking jurisdictions is that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions."

Further, in 23 Tex.Jur.2d, Evidence, Sec. 194, p. 294, it is stated:

"As a general rule, in criminal cases the accused can be convicted, if at all, only by evidence that shows that he is guilty of the offense charged. Consequently, evidence that he has committed other crimes that are remote and wholly disconnected from the offense with which he is charged is ordinarily inadmissible. . . ."

There are, of course, exceptions to the general rule.

Only recently in Albrecht v. State, 486 S.W.2d 97, 100 (Tex.Cr.App.1972), this court wrote:

"Evidence of extraneous offenses committed by the accused has been held admissible: (1) To show the context in which the criminal act occurred—what has been termed the 'res gestae'—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. (2) To circumstantially prove identity where the state lacks direct evidence on this issue. (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, when malice is an essential element of the state's case and cannot be inferred from the criminal act. (5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part. (6) To refute a defensive theory raised by the accused."

These exceptions are not mutually exclusive—Albrecht v. State, supra.

■ In the instant case, in light of the extrajudicial statement completely confessing the murder offense charged and the testimony placing the appellant in company with the deceased shortly before the murder, the extraneous offense of burglary was not admissible to prove identity, intent, scienter, malice or motive, etc.

As Hafti v. State, 416 S.W.2d 824 (Tex.Cr.App.1967), made clear the rule is consistent that if the testimony of the State leaves no question as to intent or identity, etc., proof of an independent crime is not admissible. See also Bennett v. State, 422 S.W.2d 438 (Tex.Cr.App. 1967); Shaw v. State, 479 S.W.2d 918 (Tex.Cr.App.1971).

■ The State seeks to justify the admission of the extraneous offense as part of the "res gestae" of the charged offense, contending that it was so closely interwoven, blended or tied together therewith to make it admissible. See, i. e., Joshlin v.

State, 488 S.W.2d 773 (Tex.Cr.App.1972), and cases there cited; Washington v. State, 496 S.W.2d 77 (Tex.Cr.App.1973).

Here, the extraneous offense occurred some two to two and one-half hours after the alleged offense and some seven or eight miles away, without any showing that it was part of the same continuing transaction.[1] The State, nevertheless, urges that such evidence showed flight and the commission of an extraneous offense while the accused is attempting to flee may in a proper case be admissible. See Albrecht v. State, supra; Woods v. State, 480 S.W.2d 664 (Tex.Cr.App.1972). We cannot agree. The evidence reflects that appellant left the scene of the crime, but went back to Brownwood, where he had been staying, and went to sleep in his bed at his mother's house and returned to the scene of the crime the next morning. Cf. Jones v. State, 481 S.W.2d 900 (Tex.Cr. App.1972).

Further, the State urges that the extraneous offense was admissible to defeat the defensive theory of insanity at the time of the commission of the offense. The State recognizes that the extraneous offense was introduced when the extrajudicial confession was offered at the beginning of the State's case in chief and long before the defensive theory was raised, but relying upon Johnson v. State, 494 S.W.2d 870 (Tex.Cr.App.1973), and Gilmore v. State, 493 S.W.2d 163 (Tex.Cr.App.1973), contends that since such evidence would have been admissible on rebuttal, the error, if any, as to the time of presentation, is rendered harmless.

While we agree with the proposition of law cited in *Johnson* and *Gilmore*, we cannot agree that the extraneous offense tended to defeat or discredit the defensive theory of insanity, thus rendering such evidence admissible.

For the admission of the extraneous offense, upon which the State clearly need not have relied for conviction, the judgment is reversed and the cause remanded.

---

1. We are not here dealing with a confession in which the admission of the extraneous offense in said confession is not severable from the balance of the confession admitting the charged offense as in Richardson v. State, 101 Tex.Cr. R. 467, 276 S.W.2d 270 (1925).