**Kenneth Eugene SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63,201.**

Court of Criminal Appeals of Texas, Panel No. 2.

March 9, 1983.

OPINION

TEAGUE, Judge.

Kenneth Eugene Smith, appellant, appeals his conviction by a jury for committing the offense of aggravated robbery. The jury also rejected appellant's application for probation and assessed punishment at 10 years' confinement in the penitentiary. We will reverse appellant's conviction because we find that the trial court erred by admitting into evidence a spontaneous declaration of a person who did not testify at appellant's trial. The spontaneous declaration contained an accusation that appellant had robbed and attempted to rape the declarant, and was the reason for appellant's arrest. The spontaneous declaration, other than being the reason for appellant's arrest, had nothing whatsoever to do with the offense for which appellant was tried and convicted. The record reflects that the declarant later recanted her accusation, but the jury was never informed of this.

 Appellant in his appeal also raises other grounds of error, two of which challenge the sufficiency of the evidence. We find that all of these grounds of error have no merit. Nevertheless, we will later discuss those which challenge the sufficiency of the evidence because a challenge to the sufficiency of the evidence must be considered before disposing of a case. *Hooker v. State,* 621 S.W.2d 597 (Tex.Cr.App.1981).

A brief summary of the facts is necessary to understand why we order this conviction reversed. The complaining witness, of the offense for which appellant was convicted, testified that on November 11, 1978, a Saturday, the gospel group to which she belonged had driven to Huntsville from Dallas, where they performed that weekend. The group returned late Sunday night, with the complainant arriving at her residence at approximately 2:30 a.m. on Monday morning. While in the process of removing articles from her automobile, a person she later identified as the appellant, while brandishing a firearm, robbed her of money which belonged to the gospel group. Thereafter,

John G. Tatum, on appeal only, Mesquite, for appellant.

Henry Wade, Dist. Atty. and Maridell Templeton, Paul Macaluso and Martin Le-Noir, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for State.

Before ONION, P.J., and CLINTON and TEAGUE, JJ.

appellant abducted the complainant and forced her to drive her automobile to a motel, where she was forced to obtain a motel room. However, before entering the motel room, the complainant succeeded in escaping from the appellant. She thereafter successfully obtained assistance from the night manager of the motel. During the time the complainant was seeking assistance, the appellant fled the motel premises on foot. The police were notified and Madison Jacobs, a Dallas Police Officer, was dispatched to the motel to make an investigation. After arrival at the motel, Jacobs obtained from the complainant a report regarding the robbery and abduction, as well as obtaining from her a physical description of the offender. Jacobs testified that after he had obtained all of the information he could from the complainant, he then "broadcast the information over the [police] radio." Appellant was arrested within a few hours after the broadcast was made. However, as will shortly be seen, the broadcast had nothing to do with causing or bringing about appellant's arrest.

The record also reflects that at or near the time that the complainant was being robbed and abducted, Steve Roberts, another Dallas Police Officer, was then on patrol duty at a nearby location. Roberts was then in the process of attempting to match a license plate number he had with either moving or parked motor vehicles, in order to apprehend one or more individuals who had previously disturbed the peace of several employees of convenience stores located in the area. During this period of time, Roberts observed the appellant driving a motor vehicle which had, but for one digit, the same license number he was looking for. Appellant was alone at the time. Roberts

made inquiry of the police dispatcher of the ownership of the vehicle he had seen appellant driving, and received back from the dispatcher the name and address of what turned out to be appellant and his address. Roberts thereafter had occasion to detain appellant in order to ascertain what relationship appellant had with the vehicle he was driving. After confirming that appellant was the registered owner of the motor vehicle he was driving, Roberts permitted appellant to continue about his business. However, for reasons not clearly stated in the record, Roberts thereafter "trailed" appellant in his marked patrol vehicle. While "trailing" the appellant, Roberts observed appellant stop his automobile at a bus stop, where he picked up an unidentified female person, who was shown to be waiting on a bus.[1] Thereafter, appellant drove to a deserted section of town where he parked his vehicle. As Roberts drove his patrol car toward appellant's parked vehicle, the unidentified female person emerged from appellant's vehicle. She then ran in the direction of Roberts' vehicle, all the while screaming that appellant had robbed her and had been in the process of attempting to rape her. With Roberts assistance, the unidentified female person got into the back of Roberts' patrol car. The spontaneous declaration of the unidentified female person caused Roberts to arrest appellant. The record also reflects that at the scene of the arrest, the unidentified female person recanted her accusation that appellant had either robbed her or had been attempting to rape her.

Although Roberts testified that he had received over the police radio in his vehicle the above police broadcast, the record unequivocally reflects and demonstrates that

---

1. The statement of facts of a hearing held outside the presence of the jury reflects the following:

> Q: (By defense attorney). Would it be V.—J.—F.—black female, age twenty-two?
> A: (By Roberts). Yes, If that's what's written in the narrative report, that is her name.
>
> In the presence of the jury, Roberts responded in like fashion.

> Q: (By defense attorney). Would the lady that you say ran from the car—would that be V.—J.—F.?
> A: (By Roberts). If that's the name in my report, it is, yes.

Because Roberts' answers are conditional, we are unable to state that the name of the female person who made the spontaneous declaration and V.—J.—F.— are one and the same person. We will hereinafter refer to that person as "the unidentified female person."

the information Roberts had received did not have anything whatsoever to do with his actions concerning either detaining appellant or later arresting appellant. In fact, Roberts testified: "Well, I knew he fit the general description I had; but other than that, *I had no way of tying him to that robbery*." [Emphasis Added]. It further appears from the record that appellant's connection to the primary offense was not actually established until after Jacobs and another Dallas Police Officer, Gary Richard Catterson, had arrived at the scene of appellant's arrest, where they had been dispatched to be "back up" officers. We infer from the record that it was not until after the officers had consulted with each other that it was then determined appellant should be charged for committing the primary offense.

Appellant asserts in his first ground of error that he "was entitled to be tried only on the accusation in the indictment and not on the collateral evidence that was presented before the jury of the woman running from the Ford automobile screaming rape." We agree and will sustain this ground of error.

The trial judge conducted a hearing outside the jury's presence on the admissibility of the spontaneous declaration. After the hearing was held, the trial judge ruled: "I think at that point in time ['where the officer is in the squad car and the lady jumps out of the squad car (sic) and comes running back'], that's part of the res gestae of the ultimate arrest, and any conversation that occurs at that point in time is part of the res gestae." Thereafter, in the jury's presence, Roberts, over appellant's renewed objection, testified that "As I approached the vehicle, I saw a woman running from

the rear of the vehicle towards my squad car, screaming, ['He robbed me! He was going to rape me!], with her shoes and her purse in her hand." As previously noted, the record reflects that the unidentified female person later recanted her accusation. However, the jury was never informed of this retraction.

The State responds to appellant's contention that the spontaneous declaration was inadmissible by arguing that the spontaneous declaration was "res gestae of the appellant's arrest." The State also asserts that the declaration was admissible because "The State may prove the circumstances surrounding the subsequent arrest of an accused."[2]

▮ The State, however, in its response to appellant's contention, overlooks the fundamental principle of law that "an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally." *Young v. State*, 159 Tex.Cr.R. 164, 165, 261 S.W.2d 836, 837 (Tex.Cr.App.1953). There are, however, many exceptions to the general rule of inadmissibility, see *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972), and a collateral, extraneous, and extrinsic criminal offense may be admissible as an exception to the general rule of inadmissibility. Presiding Judge Onion made the following observation in *Lombardo v. State*, 503 S.W.2d 780, 783 (Tex.Cr.App.1974): "The circumstances which justify the admission of evidence of extraneous offenses are as varied as the factual context of the cases in which the admissibility of such evidence arises. Each case must be determined on its own merits." Because the only basis the trial court used for admitting into evidence the

---

2. The State does not inform us just exactly when or where the term, "res gestae of the accused's arrest," came into existence, and our research has yet to reveal the actual source of the term. Ray Moses, in his book, *Criminal Defense Sourcebook: A Texas Lawyers Guide* (1974 Ed.), at pp. 506–507, points out the following: "The phrase *res gestae* is an anachronism in the law of evidence. It is an imprecise and unarticulate handle. However, in view of the fact that the appellate court opinions of

Texas continue to reinforce its use, one must recognize its present viability and proceed to determine its true meaning." We have concluded that in the context of this cause, the State is using the term in the sense of a shorthand expression or rendition of the events concerning an arrest of an accused person, and is not using it in a literal sense. Also see, Vol. 24 *Tex.Jur.2d*, Sections 596–603 (2nd Edition 1961).

spontaneous declaration was the "res gestae of the arrest" exception to the general rule of inadmissibility of an extraneous offense, and is the only exception urged by the State, and because we are unable to hold that any other exception might be applicable to this cause, we will limit our remarks to that exception.

Nevertheless, before considering the applicability of the res gestae of the arrest exception to this cause, we first point out the following: there was positive proof by the State of the allegations in the indictment; appellant did not inject into the case any issue that would have authorized the admission into evidence of the spontaneous declaration, compare *Ex parte Carter*, 621 S.W.2d 786 (Tex.Cr.App.1981); *Bell v. State*, 620 S.W.2d 116 (Tex.Cr.App.1981); the cross examination of the complainant did not exceed the bounds of proper cross examination, see *Caldwell v. State*, 477 S.W.2d 877, 879 (Tex.Cr.App.1972); the facts do not show that appellant was attempting to flee after committing the primary offense, see *Powers v. State*, 508 S.W.2d 377 (Tex.Cr.App.1974); there were no distinguishing common characteristics between the primary offense and the reasons for appellant's arrest, see *Ford v. State*, 484 S.W.2d 727 (Tex.Cr.App.1972); and the appellant did not inject into the case any defensive issue such as alibi, see *Carpenter v. State*, 596 S.W.2d 115, 120 (Tex.Cr.App.1980) (Opinion on Original Submission).

The State in its response has cited and discussed several decisions of this Court, claiming that they control the disposition of appellant's ground of error. We have carefully examined the cited and discussed authorities, but are unable to agree that they "fit" this case. See, however, *Tarpley v. State*, 565 S.W.2d 525 (Tex.Cr.App.1978); *Milligan v. State*, 554 S.W.2d 192 (Tex.Cr.App.1977); *Downey v. State*, 505 S.W.2d 907 (Tex.Cr.App.1974); *Oliver v. State*, 491 S.W.2d 125 (Tex.Cr.App.1974); *Johnson v. State*, 482 S.W.2d 199 (Tex.Cr.App.1972); *Lenzi v. State*, 456 S.W.2d 99 (Tex.Cr.App.

1970). Our examination of these decisions reveals that the contested extraneous offenses in those causes were truly admissible to show the circumstances surrounding the arrests of the defendants in those causes, which arrests were for crimes for which the defendants were subsequently prosecuted. However, that is not what is before us in this cause. The spontaneous declaration had absolutely nothing to do with the offense for which appellant was tried and convicted.

Our reading of this Court's past decisions which have discussed the res gestae of the arrest exception has caused us to conclude that its use of the term, "res gestae," in connection with an arrest situation, may not be completely clear. In fact, the treatment this and other courts have given the term, "res gestae," has caused one student of the law to exclaim: "The courts must refuse to allow the term [res gestae] to be a shield for the ignorance and sloth of members of the legal profession. And the only way to accomplish this is to banish the term res gestae from the legal vocabulary forever." Michael E. Bornhouser, "Res Gestae: A Synonym for Confusion," Vol. XX, *Baylor Law Review* (1968). We do not believe that such is a necessary step to take in our jurisprudence at this time. Another student of the law has made the following recommendation: "Although careful enunciation of the present uses of 'res gestae' would not correct all the problems caused by that unfortunate word, it would at least make possible the entrance of an order on a stage formerly occupied only by chaos. The Court of Criminal Appeals [of Texas] should immediately take this self-disciplining step toward building a more useful law." G.T. Banks, "Res Gestae in the Texas Court of Criminal Appeals: A Method to Their Madness?" Vol. 50–1, *Texas Law Review* (1971–1972). If we have not done so in the past, we try today.

■ A spontaneous declaration is, of course, admissible as an exception to the hearsay rule of evidence.[3] In *Kornicki v.*

---

3. Ray Moses, in his book, *Criminal Defense*

*Sourcebook: A Texas Lawyers Guide* (1974

*Calmar Steamship Corporation,* 460 F.2d 1134, 1138 (3rd Circuit 1972), see also David F. Binder, *The Hearsay Handbook* (1975 Edition), that court well stated what a spontaneous declaration is:

> It is based on the experience that, under certain circumstances of physical shock or stress, nervous excitement may be produced which stills the reflecting faculties of the declarant and removes their control. Thus, the theory goes, the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the shocking event...[4]

It was also pointed out in *Kornicki* that "The burden of establishing the facts to qualify a declaration as part of the res gestae is on the proponent of such evidence."

It has been suggested that if an oral statement falls within the definition of "spontaneous declaration," such should be referred to as a spontaneous declaration rather than res gestae. 1173 Black's Law Dictionary (Fifth Edition 1979).

■ We have concluded from our reading of this Court's past decisions, which have discussed the res gestae of the arrest exception, that although implicated in those decisions, it has never been expressly stated that an extraneous offense brought out through a spontaneous declaration must relate to or be connected with the offense for which the accused is on trial for committing. To eliminate any question about the matter, we hold today that before a spontaneous declaration, uttered at the scene of the accused's arrest, is admissible in evidence at the trial of an accused, the State must establish and demonstrate that the spontaneous declaration is related to or connected in some material way with the offense for which the accused is on trial for committing.

■ The accusatory statement of the unidentified female person was, by the above definition, a spontaneous declaration. At the moment it was made, extraneous offenses were established. However, before the spontaneous declaration was admissible in this cause, it was incumbent upon the State to establish and demonstrate that it was relevant, material, or probative to the commission of the primary offense.[5] *Carpenter v. State,* supra. If evidence that is prejudicial and harmful, and which has little or no relevance to any issue in the case, is admitted into evidence over objection, this Court generally reverses the conviction. See *Jones v. State,* 471 S.W.2d 413 (Tex.Cr.App.1971); *Hernandez v. State,* 484 S.W.2d 754 (Tex.Cr.App.1972); *Lanham v. State,* 474 S.W.2d 197 (Tex.Cr.App.1972);

---

Edition), points out at page 507: "The only *res gestae* utterance that is admissible as a genuine exception to the hearsay rule is the spontaneous utterance or excited exclamation, which may or may not be exactly contemporaneous with the provable act or event. The controlling factor of admissibility is spontaneity, i.e., whether the utterance made was instinctive."

4. For another well stated definition of spontaneous declaration or utterance, see Moses, supra, at page 507. See also Ray, Law of Evidence, Section 913 et seq. (3rd Ed. 1980); *Ricondo v. State,* 475 S.W.2d 793 (Tex.Cr.App. 1971); *Goad v. State,* 464 S.W.2d 129 (Tex.Cr. App.1971); *James v. State,* 170 Tex.Cr.R. 402, 341 S.W.2d 436 (Tex.Cr.App.1960); *Fambro v. State,* 142 Tex.Cr.R. 473, 154 S.W.2d 840, (Tex. Cr.App.1941); *Banks v. State,* 95 S.W.2d 421 (Tex.Cr.App.1936); *Outlaw v. State,* 125 Tex. Cr.R. 636, 69 S.W.2d 120 (Tex.Cr.App.1934); *Freeman v. State,* 40 Tex.Cr.R. 545, 46 S.W. 641 (Tex.Cr.App.1898); *Lewis v. State,* 29 Tex. App. 201, 15 S.W. 642 (Tex.Cr.App.1890);

*Chapman v. State,* 43 Tex.Cr.R. 328, 65 S.W. 1098 (Tex.Cr.App.1901).

5. In Vol. 24, *Tex.Jur.2d* (1961 Edition), under section 603, at page 145, the following was stated concerning "Acts and Declarations of third parties": "Declarations of third persons immediately before the commission of a crime are admissible as part of the res gestae where they are spontaneously uttered, are concerned with the injurious consequences of the offense, and tend to explain some material aspect of the offense. Likewise, acts and declarations of third persons made subsequently to the commission of a crime may be admitted under the rule where they were so closely related to the offense as to be a part thereof and to be illustrative of its nature. On the other hand, the acts and declarations of a third person after the happening of a crime are inadmissible if they were wholly unrelated to the offense and do not tend to case any light thereon."

*Stanley v. State,* 606 S.W.2d 918 (Tex.Cr. App.1980). In *Ford v. State,* supra, Judge Roberts, the author of the opinion, pointed out the following:

It should be remembered that evidence of other crimes is not excluded because it is without probative value, but is excluded because it may unduly prejudice the jury and cause the accused to be tried for more than one offense at a time. We, therefore, further hold that before this type evidence is admitted into evidence, it must be more reliable and of greater probative value than mere evidence of the commission of another crime. (730).

▪ The admission into evidence during the trial of the charged criminal offense of an independent, unrelated, and collateral criminal offense is inherently prejudicial. It has a tendency to draw away the minds of the jurors from the subject in issue, the primary offense, and to excite prejudice toward the accused. It also may mislead the jurors as to the main issue they are to resolve, that is, whether or not the accused is guilty of the criminal offense for which he is on trial. Also see *Gardner v. State,* 11 Tex.App. 265, 275 (1881). The State, therefore, has a heavy burden to sustain before the admission into evidence of an extraneous offense may legally occur. In this instance, we hold the State failed to sustain its burden, because it did not properly establish that the spontaneous declaration was material, relevant, and probative to the appellant's trial.

We find an analogy between the spontaneous declaration in this cause and what occurred in this Court's recent decision of *Stanley v. State,* 606 S.W.2d 918 (Tex.Cr. App.1980). In *Stanley,* Id., it was held to be error to admit into evidence a large number of weapons and other items of personal property which were found in the automobile in which the defendant was sitting at the time of his arrest. For reasons stated in the opinion, the Court held that one of the weapons was admissible. Also see *Simmons v. State,* 622 S.W.2d 111, 113 (Tex.Cr.App.1981). As to the other weapons and items of property admitted into evidence, the Court held they should not have been admitted into evidence because they were irrelevant to the commission of the aggravated robbery offense for which appellant was on trial. Although recognizing that in the one instance the inadmissible evidence consisted of tangible property, whereas here we are dealing with an oral statement, nevertheless, the reasons for exclusion are the same. "Nothing was presented to show that [this evidence] related to the [offense] for which appellant was being tried. [This evidence was] improperly admitted in evidence." [Citations Omitted]. *Stanley v. State,* Id., at page 920.

▪ The error of the trial court in admitting the spontaneous declaration into evidence also was not harmless error. Although the prosecuting attorney did not expressly refer in his arguments to the jury to the spontaneous declaration, nevertheless, our reading of his argument to the jury at the guilt stage of the trial leads us to conclude that he most certainly implicated it in his argument. *Clemons v. State,* 605 S.W.2d 567 (Tex.Cr.App.1980); *Jordan v. State,* 576 S.W.2d 825 (Tex.Cr.App.1978).

Appellant's first ground of error is therefore sustained.

Appellant in a combination of two grounds of error raises the contention that the evidence is insufficient to sustain the verdict of the jury. We find appellant's challenge that the evidence is insufficient is centered around his assertion that the complainant's in court identification of him was tainted, and therefore she should not have been permitted to testify that the appellant was her assailant. Appellant reasons that if the in court identification testimony is excluded, then the State's evidence will become insufficient. We reject appellant's contention that the evidence is insufficient and will overrule his grounds of error numbered two and three.

In *Jackson v. State,* 628 S.W.2d 446 (Tex. Cr.App.1982), a panel of this Court recently stated:

The ultimate factor to be decided, where a complaining witness' in-court identification is challenged, rests on how indepen-

dent the witness' ability to reconstruct an accurate image of the criminal wrongdoer may be, in comparison with the defendant in court.

It was also observed in *Jackson,* Id.: A defendant who contends on appeal that a trial court erred in allowing an in-court identification of him by the complaining witness has a difficult and heavy burden to sustain, for unless it is shown by clear and convincing evidence that a complaining witness' in-court identification of a defendant as the assailant was tainted by improper pre-trial identification procedures and confrontations, the in-court identification is always admissible.

The record in this cause reflects that shortly before trial commenced, a corporeal type lineup was conducted, with appellant and others in the lineup. Appellant's counsel was present. Compare *Taylor v. State,* 474 S.W.2d 207 (Tex.Cr.App.1972). Afterwards, the complainant made a positive and unequivocal identification of the appellant as being her assailant. The record clearly reflects that the complainant, during the course of the robbery and abduction, had an excellent opportunity to view her assailant. There was a lighted street lamp near her driveway. The motel parking lot was shown to be well lighted. The complainant was with the appellant for a period of time; outside her residence, enroute to the motel, and at the parking lot of the motel. Although it might be argued that the physical description the complainant gave the police did not perfectly match appellant's physical description, nevertheless, we observe that it was sufficient to link him to the primary offense.

Appellant's counsel on appeal, in his argument to support his contention that the in court identification was inadmissible, places great emphasis upon the fact that the complainant "might have" thought that she saw appellant approximately a week after the offense was committed, when appellant was then incarcerated. The complainant explained that the error occurred because of both a lack of proximity to the person and the brief length of time she had to observe him. We believe her explanation to be a reasonable one. Appellant's counsel also relies heavily upon the fact that when he and a companion, several days before trial, presented to the complainant a photographic array she indicated that appellant's photograph was not in the array, when in fact it was. The complainant testified that she did not make an identification at that time for fear of impropriety. Under the circumstances, we find this to be a reasonable explanation.

We are unable to agree with appellant that under this record there was any pre-trial taint of the complainant's in court identification of the appellant as her assailant. Furthermore, weighing appellant's challenges to the in court identification that was made by the complainant, which appear to go to the weight and not to the admissibility of such testimony, see *Williams v. State,* 466 S.W.2d 313 (Tex.Cr.App. 1971), against the fact that the complainant did promptly identify the appellant from a group of photographs one day after the crime, selected him from the lineup that was conducted shortly before the trial commenced, and consistently and clearly identified him during her in court testimony, we are unable to hold that the in court identification was improper. Appellant's complaint regarding the sufficiency of the evidence is conditioned upon this Court making a favorable ruling on the in court identification issue. Because we have rejected that contention, his complaint that the evidence is insufficient to sustain the verdict of the jury also is overruled.

The judgment of conviction is reversed, and the cause remanded to the trial court.